IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                        No. 1:21-CR-1066-WJ

ERIK SCHLENKER,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**REGARDING SUPERVISED RELEASE VIOLATIONS**

**THIS MATTER** requires the Court to decide which branch of government—that is, the Judiciary or the Executive—controls supervised release revocation hearings. On December 3, 2024, the Court filed an Order directing the parties to weigh in on the issue. *See* **Doc. 115**. Both the United States (**Doc. 117**) and Defendant Schlenker (**Doc. 118**) filed responses. The issue is now fully briefed and ripe for review.

**LEGAL AND HISTORICAL BACKGROUND**

Federal parole was abolished by the Sentencing Reform Act ("SRA") of 1984. *See* Pub. L. No. 98-473, 98 Stat. 1837, 1999–2000 (1984); *see also Mistretta v. United States*, 488 U.S. 361, 367 (1989) ("The Act . . . abolish[ed] the Parole Commission."). "By abolishing parole and substituting supervised release," the SRA provided both determinate sentencing and a "transition period" of supervision. *United States v. Haymond*, 588 U.S. 634, 664–65 (2019) (Alito, J., dissenting). Upon release from incarceration, a defendant "must comply with 'restrictions, imposed by the judge at sentencing, called conditions or terms of supervised release, that . . . continue for a specific term of years.'" *United States v. Ka*, 982 F.3d 219, 227 (4th Cir. 2020)

(Gregory, C.J., dissenting) (quoting *United States v. Thompson*, 777 F.3d 368, 372 (7th Cir. 2015)). Ironically, though, the SRA provided "no mechanism to revoke a defendant's supervised release." Jacob Schuman, *Supervised Release is Not Parole*, 53 LOY. L.A. L. REV. 587, 604 (2020) (citing Paula Kei Biderman & Jon M. Sands, *A Prescribed Failure: The Lost Potential of Supervised Release*, 6 FED. SENT'G REP. 204 (1994)).

Two years after enacting the SRA, Congress amended the supervised release system—and empowered judges to revoke a term of supervised release. *See* Anti-Drug Abuse Act ("ADAA") of 1986, Pub. L. No. 99-570, §§ 1005 & 6, 100 Stat. 3207, 3207–6 & 7 (1986); *see also* Fed. R. Crim. P. 32.1. The ADAA authorized courts to "revoke" supervised release and impose a new term of imprisonment, in accordance with the procedures outlined in Rule 32.1. *See* Stefan R. Underhill & Grace E. Powell, *Expedient Imprisonment: How Federal Supervised Release Sentences Violate the Constitution*, 108 VA. L. REV. ONLINE 297, 305–06 (2022).

Then, in 1994, Congress enacted a "mandatory revocation" provision—requiring judges to revoke release if a defendant: (1) possesses a controlled substance, (2) possesses a firearm, or (3) refuses a drug test. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110505, 108 Stat. 1796, 2016–17.

Nowadays federal district judges are vested with the authority to impose an additional term of imprisonment (and/or an additional period of supervised release) if a defendant violates the terms of his supervised release. *See United States v. Robinson*, 62 F.3d 1282, 1283–85 (10th Cir. 1995). In *Robinson*, the Tenth Circuit stated that "the provisions of 3583(a) are clear and unambiguous in extending to the sentencing judge discretionary authority . . . to impose the supervised release period requirement. Moreover, the same statute . . . unambiguously gives discretion to revoke a term of supervised release." *Id.* at 1284; *see also United States v. Duran*,

2

2024 U.S. App. LEXIS 25642, at *5 (10th Cir. Oct. 11, 2024) (unpublished) ("A district court may impose post-incarceration supervised release after revoking a defendant's supervised release—but in so doing, it must consider factors from § 3553(a).").

## APPLICABLE LEGAL STANDARD

Under 18 U.S.C. § 3583(d), a mandatory condition of supervised release is that "the defendant not commit another Federal, State, or local crime." At the same time, though, a violation of this condition may arise irrespective of whether the defendant has been the subject of a separate federal, state, or local prosecution. *See* USSG § 7B1.1, cmt. n.1. In fact, the violation is "based on the defendant's actual conduct," *id.*, not what is—or is not—charged in the separate criminal proceeding.

Thus, a district court acts within its discretion to revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." This preponderance-of-the-evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. James*, 603 F. App'x 717, 720 (10th Cir. 2015) (unpublished) (internal quotations and citations omitted). Determining whether a defendant violated a condition of his supervised release depends on his actual conduct, not whether he was charged with, or convicted of, a crime. *See* USSG § 7B1.1 cmt. n.1. As such, a district court "would still be entitled to revoke [a defendant's] supervised release even if [that defendant] is ultimately acquitted of any state charges." *United States v. Harsh*, 368 F. App'x 873, 875 (10th Cir. 2010) (unpublished); *see also United States v. Owens*, 394 F. App'x 504, 510–11 (10th Cir. 2010) (unpublished).

## FACTS

Here, U.S. Probation filed a "Violation Report." *See* **Doc. 96**. The Report notes that Defendant Schlenker failed to reside at a residential reentry center for a term of up to six months and failed to follow the rules and regulations of the program. *See id.* **at 2**. The Report also alleges new law violations. Specifically, the Report asserts Defendant is facing state charges in three[1] cases. *Id.* Because of Probation's filing, the Court docketed a supervised release revocation hearing (**Doc. 109**). At the supervised release hearing, the United States informed the Court it would not be proceeding on the new law violations. *See* **Doc. 113**. In light of the United States' stance on the matter, the Court continued the proceeding and ordered briefing. *See* **Docs. 113 & 115**.

\* \* \*

Some additional background is important to fully set the stage. Back in June 2023, the U.S. Attorney wrote a letter to the undersigned. *See* Letter from Alexander M.M. Uballez, United States Attorney for the District of New Mexico, *New Law Violations in Petitions to Revoke Supervised Release* (June 27, 2023) (on file with the undersigned and attached as exhibit 1). In this letter, the U.S. Attorney explained his policy regarding supervised release. Namely, Mr. Uballez informed the Court that he "directed" all Assistant U.S. Attorneys ("AUSAs") not to pursue new law violations. This meant that the AUSAs should not pursue revocation in the first instance for pending charges constituting new law violations. Much the same, if Probation filed a petition based on new state charges, then the AUSAs were "instructed" to either: (1) dismiss the allegation, or (2) resolve the matter by way of admission to a technical violation.

---

[1] The first case, M48-FR2023-00424, alleges the following: (1) Aggravated Assault Upon a Peace Officer (Deadly Weapon) and (2) Aggravated Fleeing a Law Enforcement Officer (No Injury or Great Bodily Harm). The second case, M48-FR2023-00433, involves allegations of: (1) Unlawful Taking of a Motor Vehicle, and (2) Battery (household member). The third case, M48-FR2024-00112, alleges: (1) Battery Upon a Peace Officer, and (2) Resisting, Evading, or Obstructing an Officer. *See* **Docs. 94–96**. These state law charges constitute a "grade B violation." **Doc. 96 at 3** (citing USSG § 7B1.1(a)).

Because of this policy, the undersigned—as the Chief Judge for the District of New Mexico at the time and with approval of the other district judges—filed a "Standing Order" bringing supervised release back into the hands of the judiciary. *See* 25-MC-00004 and attached exhibit 2. The Standing Order requires any dismissal of a petition to revoke be filed "in writing." The Order also explains that only the assigned United States District Judge can grant dismissal. In closing, the undersigned noted the Order "shall lapse should the United States Attorney for the District of New Mexico vacate [the] policy as expressed in his letter."[2]

## DISCUSSION

The question presented is whether 18 U.S.C. § 3583 is a judicial power or an executive power.[3]

First, the text of the supervised release statute repeatedly refers to "the court" as having authority to impose, set, modify, and revoke supervised release. 18 U.S.C. § 3583. Second, it is well settled that supervised release is part of the original sentence. *See Johnson v. United States*, 529 U.S. 694, 701 (2000). And history shows that since "the beginning of the Republic, federal judges were entrusted with wide sentencing discretion." Kate Stith & Steve Koh, *The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines*, 28 WAKE FOREST L. REV. 223, 225 (1993); *see also Concepcion v. United States*, 597 U.S. 481, 490 (2022)

---

[2] Attorneys Generals (and U.S. Attorneys) come and go—and Department of Justice policies change accordingly. Resultant of the recent change in administration, this policy may be vacated/rescinded. *See, e.g., United States v. Lawson*, No. 03-cr-282-1, 2022 U.S. Dist. LEXIS 121974, at *24 (D.D.C. July 11, 2022) (noting that "the Department of Justice's prosecutorial guidance has 'changed over time,' including becoming more lenient when President Biden took office"); *D.J.C.V. v. United States*, 687 F. Supp. 3d 423, 431 (S.D.N.Y. 2023) (listing changes at "each United States Attorney's Office"). Stated another way, the issue here—*i.e.*, which branch controls supervised release—could soon become moot.

[3] This Court looks to text, history, tradition, and precedent for guidance. Of note, the Supreme Court has cited these pillars as particularly informative for both statutory and constitutional questions. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020) (evaluating a statute's "text," "history," and relevant Supreme Court "precedent"); *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (beginning with the "constitutional text and history" and also considering "historical tradition").

(same). Finally, court of appeals precedent—from both inside and outside the Tenth Circuit—indicates, plainly, that a sentencing court may initiate revocation proceedings *sua sponte*. *See infra* ¶ I (citing cases).

For these reasons, and those that follow, the Court concludes revocation—whether discretionary under subsection (e) or mandatory under subsection (g)—is a judicial power. *Cf. Gozlon-Peretz v. United States*, 498 U.S. 395, 400 (1991) ("[T]he sentencing court . . . oversee[s] the defendant's postconfinement monitoring." (citing 18 U.S.C. § 3583)).

**I. Turning to the Text**

Article III provides a jury trial right for "all Crimes"—*i.e.*, all federal offenses (except impeachment). *See* U.S. CONST. art. III, § 2, cl. 3. And the Sixth Amendment applies to "all criminal prosecutions." U.S. CONST. amend. VI. Although this Court does not wade into the ongoing debate of "crimes" vis-à-vis "criminal offenses," violating supervised release does not fit the bill of either. *See, e.g.,* Stephen A. Siegel, *Textualism on Trial: Article III's Jury Trial Provision, The "Petty Offense" Exception, and Other Departures from Clear Constitutional Text*, 51 HOUS. L. REV. 89, 113–20 (2013); Brief of Criminal Law Professors Andrea Roth and J.D. King as Amici Curiae Supporting Petitioner, *Lesh v. United States*, No. 24-654 (Jan. 16, 2025); *cf. United States v. Lesh*, 107 F.4th 1239, 1252 (10th Cir. 2024) (Tymkovich, J., concurring).

That's because revocation is based upon "violat[ing] a condition," not on a prosecution decision about a new "offense" or "charge." *Compare* 18 U.S.C. § 3583(e), *with* 18 U.S.C. § 3172(2) (defining "offense"), *and* Fed. R. Crim. P. 7. The United States Attorney does not file a Complaint, Information, or Indictment. Instead, Probation reports the violation "to the court." 18 U.S.C. § 3603(8).

6

In fact, "the full panoply of rights" afforded to criminal defendants do not apply to individuals on supervised release. *United States v. Martinez-Espinoza*, 110 F.4th 1187, 1194–95 (10th Cir. 2024) (quoting *United States v. Williams*, 106 F.4th 1040, 1045 (10th Cir. 2024)). Rather, individuals on supervised release only enjoy "conditional liberty." *United States v. Ward*, 770 F.3d 1090, 1099 (4th Cir. 2014) (citing *Cordova*, 461 F.3d at 1187). Unlike criminal prosecutions, which "deprive a defendant of absolute liberty," revocation proceedings only involve "conditional liberty." Jacob Schuman, *Criminal Violations*, 108 VA. L. REV. 1817, 1835 (2022); *see also United States v. Carpenter*, 104 F.4th 655, 657 (7th Cir. 2024) (explaining revocation proceedings implicate "conditional (rather than absolute) liberty" (quoting *United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015))). "[A] a defendant on supervised release is not a 'free citizen.'" *United States v. Acosta*, 480 F. App'x 923, 925 (10th Cir. 2012) (unpublished). As such, a convict on supervised release "does not stand in the same shoes as a person accused of committing a crime but not yet convicted . . . . Rather, he enjoys less procedural protection and may be punished upon a lesser showing of proof." *Id.* (internal quotations and citations omitted).

In a similar way, the United States Attorney's Office ("USAO") does not have its full panoply of rights at a revocation hearing either. Initiating revocation does not involve the prosecutorial discretion of the USAO. *See United States v. Barry*, No. 05-cr-556, 2007 U.S. Dist. LEXIS 30741, at *9 (D.D.C. Apr. 26, 2007). In fact, "[n]othing seems more unsuitable than a system in which the Court would be empowered to proceed on an alleged violation of a condition of supervised release ***only if*** the United States Attorney's Office exercised its prosecutorial discretion to place a decision in front of the Court." *United States v. Mejia-Sanchez*, 172 F.3d 1172, 1175 (9th Cir. 1999) (quoting *United States v. Wilson*, 973 F. Supp. 1031, 1033 (W.D. Okla. 1997) (emphasis added)).

7

\* \* \*

But what about the USAO's role in "prosecuting all offenses" against the United States? *See* **Doc. 117 at 8–9**. That logic is easily dismissed—as a revocation hearing is not a criminal prosecution (or an offense). *United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008) ("Revocation hearings are not part of a criminal prosecution."); *United States v. Cordova*, 461 F.3d 1184, 1187 (10th Cir. 2006) (explaining a "criminal prosecution" is different from a "supervised release" hearing). Neither the text of the Constitution nor the applicable statutes supports the USAO's point of view. In fact, Solicitor General Elizabeth Prelogar[4] recently explained that: "[c]onstruing Section 3583(e)(3) to divest courts of their traditional discretion would . . . create a significant statutory anomaly." Brief for the Respondent at 25, *Esteras v. United States*, No. 23-7483 (Jan. 15, 2025).

Supervised release begins and ends with the judiciary. Probation officers are an arm of the court. *See* 18 U.S.C. § 3602(a); *see also Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018) (explaining the United States Probation Office "operates as an arm of the district court." (cleaned up)). This means that when Probation files a Violation Report, the Court is initiating the proceeding. Probation's reporting requirement to the court makes sense—given that Congress provides the courts with the power to revoke a term of supervised release. *See* 18 U.S.C. §§ 3583(e)–(i). Plus, supervised release violations are based on a "breach of [the Court's] trust," not new criminal conduct. *See* USSG § 7A1.3(b); *see also United States v. Kearse*, 2024 U.S. App. LEXIS 3016, at *2–3 (10th Cir. Feb. 8, 2024) (unpublished).

---

[4] Elizabeth B. Prelogar served as the 48th Solicitor General of the United States. She was nominated by President Joseph R. Biden, Jr. on August 11, 2021, and then confirmed by the Senate on October 28, 2021. *See* Elizabeth B. Prelogar, *Historical Biography*, OFFICE OF THE SOLICITOR GENERAL, https://www.justice.gov/osg/bio/solicitor-general-elizabeth-b-prelogar.

**II. A (Brief) History of the Separation of Powers**

"The object of the constitution was to establish three great departments of government; the legislative, the executive, and the judicial departments. The first was to pass laws, the second to approve and execute them, and the third to expound and enforce them." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 329 (1816).

The United States Attorney—and/or his designated AUSA—is responsible for prosecuting crimes against the United States. 28 U.S.C. § 547(1) & (2). *See* **Doc. 117 at 8**. No doubt, the Executive branch is responsible for executing laws. *See* U.S. CONST., art. II, § 3 (explaining the President "shall take Care that the Laws be faithfully executed . . . ."); *see United States v. Texas*, 599 U.S. 670, 678 (2023); *see also Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (per curiam) ("A lawsuit is the ultimate remedy for a breach of the law, and it is to the President . . . that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'").

Article III, Section 1 of the Constitution vests the "judicial Power of the United States" in the Federal Judiciary. "Under the basic concept of separation of powers," the judicial power "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Bank Markazi v. Peterson*, 578 U.S. 212, 238 (2016) (Roberts, C.J., dissenting) (quoting *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974))). That's because "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

But sentencing is a "core judicial function." *United States v. Huerta*, 994 F.3d 711, 716 (5th Cir. 2021); *United States v. Campbell*, 77 F.4th 424, 432 (6th Cir. 2023) (same); *see also United States v. Maloid*, 71 F.4th 795, 812 (10th Cir. 2023) ("[S]entencing adjudications fall

uniquely in the Judiciary's purview."). This power belongs to Article III courts and cannot be shared with the Executive. *Cf. Stern*, 564 U.S. at 482–84; *Dep' of Transport. v. Ass'n of Am. R.R.*, 575 U.S. 43, 69–70 (Thomas, J., concurring in judgment) ("there are certain core functions" that require the exercise of a particular constitutional power and that only one branch can constitutionally perform).

* * *

The dispute over who (*viz.*, the Court or the U.S. Attorney) has the authority to revoke supervised release is not an issue of first impression. To be candid, though, the undersigned only found cases wherein criminal defendants voiced separation of powers concerns. *See United States v. Davis*, 151 F.3d 1304, 1307 (10th Cir. 1998); *United States v. Huffman*, 146 F. App'x 939, 945 (10th Cir. 2005) (unpublished); *United States v. Wilson*, 2022 U.S. App. LEXIS 10774, at *30 (10th Cir. Apr. 21, 2022) (unpublished). The difference here, obviously, is that the USAO argues this separation of powers point.

Nothing about the supervised release system violates the separation of powers. And every court of appeals to consider separation of powers challenges to the propriety of a district court's authority to initiate revocation proceedings (usually through Probation) has affirmed the practice's legality. *See, e.g., United States v. Bermudez-Plaza*, 221 F.3d 231, 234–35 (1st Cir. 2000); *United States v. Amatel*, 346 F.3d 278, 279–80 (2d Cir. 2003); *United States v. Sczubelek*, 402 F.3d 175, 187–90 (3d Cir. 2005); *United States v. Wright*, 1 F. App'x 222 (4th Cir. 2001) (unpublished and per curiam); *United States v. Cofield*, 233 F.3d 405, 409 (6th Cir. 2000); *United States v. Tucker*, 256 F. App'x 836, 837 (7th Cir. 2007); *United States v. Ahlemeier*, 391 F.3d 915, 923–24 (8th Cir. 2004); *Mejia-Sanchez*, 172 F.3d at 1174–76; *Davis*, 151 F.3d at 1306–08; *United States v. Focia*, 856 F. App'x 830, 833 (11th Cir. 2021) (unpublished and per curiam).

The Court finds the United States' arguments, **Doc. 117 at 9 n.15 & 11–12**, averring separation of powers concerns unmoving.

### III. Tradition and Precedent Regarding USAO Control[5] Over Supervised Release

The parties were asked to brief whether the Court can require the United States to participate in, and litigate, a supervised release revocation. *See* **Doc. 115 at 3**. The United States responded with a full-throated "no." **Doc. 117**.[6] But in taking this hardline approach, the United States makes no mention of how its position runs afoul of the statute's mandatory revocation provision. 18 U.S.C. § 3583(g). No mention is made of the Court's inherent authority under subsection (e). Nor does the USAO explain away Probation's duty to report violations. *See* 18 U.S.C. § 3603 ("A probation officer shall—"). The Court fundamentally disagrees with the notion that the United States must "sponsor" supervised release violations. *See* **Doc. 117 at 11**.

As lawyers who practice before the Supreme Court of the United States know, retired Associate Justice Stephen Breyer's tenure on the Supreme Court was renowned for the hypotheticals he posed during oral argument.[7] This Court now takes a page from Justice Breyer's playbook to hammer home the shortcomings in the United States' position.

---

[5] The United States argues that the Court does not "assume[] control over the litigative decisions of the Executive Branch" during supervised release revocations. **Doc. 117 at 9**. From the United States' perspective, "the USAO" not only "remains a party in the case," but also retains "its discretionary decision-making authority." *Id.*
 The Court disagrees with the notion that the United States controls supervised release revocations. Plus, Congress has spoken on this issue. *See* 18 U.S.C. § 3583(g).

[6] In part, the United States discusses how holding a supervised petition in abeyance is more practical. *See* **Doc. 117 at 6–7 & n.9**. But this argument misses the mark given the United States' representation that it would not be proceeding on the new law violations at all. *See* **Doc. 113**.

[7] *See, e.g., Recalling Breyer's Quirky Hypotheticals and Epic Questions*, N.Y. L. J. (Jan. 27, 2022), https://www.law.com/newyorklawjournal/2022/01/27/the-marble-palace-blog-recalling-breyers-quirky-hypotheticals-and-epic-questions/ [https://perma.cc/5XHZ-TMZ4]; Mark Walsh, *Breyer's Befuddling Hypotheticals Reverberate Through the Halls of SCOTUS*, ABA J. (Feb. 10, 2022), https://www.abajournal.com/web/article/breyers-befuddling-hypotheticals-reverberate-through-the-halls-of-scotus/ [https://perma.cc/7EHH-XYUD]; *Justice Breyer is King of Court Hypotheticals*, COLUMBIA DAILY TRIBUNE (Mar. 8, 2008), https://www.columbiatribune.com/story/news/2008/03/09/justice-breyer-is-king-court/21505229007/ [https://perma.cc/4CCC-CSNR]; Bill Mears, *Justice Breyer Long Known for*

*Example: Defendant Williams was released from BOP custody on February 29, 2020, after serving 12 years for distributing methamphetamine and carrying a firearm during the drug trafficking crime. His term of supervised release is 5 years (and the District of New Mexico is in charge of his supervision). Initially, Defendant Williams complies with all his mandatory and special conditions. But then, in June of 2020, he tests positive for narcotics use. In July, Defendant tests positive two more times. Given the three positive urinalysis tests, Probation petitions the Court, and an arrest warrant is issued the next day.*

*At the supervised release hearing, Defendant Williams declines to admit to the violation—at which point the United States indicates it does not want to proceed because the positive urinalysis tests are "only" for marijuana use. As such, the United States does not feel that seeking revocation is a good use of resources. Further, given the Attorney General's guidance,[8] the AUSA on the case does not feel it is in the public interest to pursue revocation.*

*What happens?*

The Tenth Circuit would say—and, in fact, has determined—mandatory revocation is both required and constitutional. *See United States v. Ewing*, 829 F. App'x 325, 330 (10th Cir. 2020) (unpublished) (analyzing § 3583(g) post-*Haymond*).

---

*High-Court "Hypotheticals,"* Fox News (Jan. 26, 2022), https://www.foxnews.com/politics/supreme-court-justice-breyer-hypothetical [https://perma.cc/45GA-34WW].

[8] "[M]arijuana remains illegal at the federal level, notwithstanding the Department of Justice's nonenforcement." *Absolute Healthcare v. NLRB*, 103 F.4th 61, 72 (D.C. Cir. 2024) (Walker, J., concurring). Regarding nonenforcement, the Court cites to the DoJ memoranda issued over the years. *See* Memorandum from David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice, Memorandum for Selected United States Attorneys (Oct. 19, 2009), *revised by* Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice, Memorandum for all United States Attorneys (Aug. 29, 2013). Recently, President Joseph R. Biden Jr. "also distinguished marijuana from other Schedule I drugs." *United States v. Elstein*, No. 18-cr-99, 2025 U.S. Dist. LEXIS 3872, at *32 (D. Utah Jan. 8, 2025) (citing *A Proclamation on Granting Pardon for Offense of Simple Possession of Marijuana.* Proclamation No. 10467, 87 Fed. Reg. 61,441 (Oct. 6, 2022) and Proclamation No. 10688, 88 Fed. Reg. 90,083 (Dec. 22, 2023)).

But, according to the USAO, the executive branch alone decides which supervised release revocations to pursue. In Defendant Schlenker's case, the USAO argues that resource challenges and prosecutorial discretion weigh against seeking revocation of supervised release. So too do witness issues. And if those reasons aren't persuasive enough, the USAO also points to their ethical obligations—*i.e.*, they are "bound to take the positions directed by their client, the United States." **Doc. 117 at 8** (citing 28 U.S.C. §§ 517, 518(b), 547(1)–(2)). These are all valid concerns—just not ones that prevail in the supervised release context.[9]

On this point, much ado is made in the United States' brief about the separation of powers and respecting a co-equal branch. *See* **Doc. 117 at 9–11**. But the United States' arguments run counter to respecting co-equal branches. The courts have no discretion under 18 U.S.C. § 3583(g). Revocation and incarceration are mandatory. Congress said so. Yet, in the same breath, the USAO argues it poses unfettered discretion to disregard Congress and its mandate to the judiciary.

Let's look at another version of the hypothetical.

*Example: Once again, Defendant Williams tests positive for narcotics (marijuana) three times. Probation petitions the Court. And the Court dockets a revocation hearing.*

---

[9] The Court doesn't want to minimize the "resource challenges" or "ethical obligations" points. At the same time, though, resources challenges persist. There is nothing unique about this policy-based reason that supersedes statutory requirements. As for the ethical aspect—that is a self-perpetuating myth. A logical fallacy. Because the U.S. Attorney instituted a policy that disfavors revoking supervised release for new state law violations, now it's unethical to pursue them? This is unmoving.
    The Court is aware that "proving up" a violation may, on occasion, be dicey. This is a legitimate concern. Still though, it's a decision for the Court (as the overseer of supervised release).
    Imagine a scenario where Defendant Williams—in the hypothetical—possessed a firearm as a convicted felon. This would, no doubt, violate 18 U.S.C. § 3583(g)(2). And it would also require mandatory revocation. But what if the United States said there were witness or proof issues? Does that revocation hearing simply never happen? Or does the Court set the hearing and decide if the proof meets the preponderance standard? The Court thinks the latter is the more prudent course of action.

*At the supervised release hearing, the United States indicates it "cannot proceed" because the positive urinalysis tests are all for marijuana use. For support, the United States cites to policy-based concerns based on a Congressional rider in the latest appropriation bill.*

Since 2014, Congress has enacted an appropriations rider forbidding the Department of Justice ("DoJ") from spending funds to prevent states from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana. But the DoJ's inability—pursuant to the appropriation bills—to prosecute States' rights issues relating to marijuana are different than expending DoJ funds to revoke supervised release. In fact, those courts confronted with this issue have not found the appropriations rider argument persuasive in the supervised release context. *See, e.g., United States v. Nixon*, 839 F.3d 885, 887–88 (9th Cir. 2016) (per curiam); *United States v. Johnson*, 228 F. Supp. 3d 57 (D.D.C. 2016); *United States v. Mitchell-Yarbrough*, No. 18-cr-32, 2021 U.S. Dist. LEXIS 159426 (W.D. Pa. Aug. 24, 2021); *United States v. Blanding*, No. 21-cr-156, 2022 U.S. Dist. LEXIS 4379 (D. Conn. Jan. 6, 2022); *United States v. Meschulam*, No. 15-cr-8001, 2015 U.S. Dist. LEXIS 27838 (S.D. Fla. Mar. 3, 2015); *United States v. Johnson*, No. 10-cr-10087, 2022 U.S. Dist. LEXIS 143364 (D. Mass. July 8, 2022); *but see United States v. Jackson*, 388 F. Supp. 3d 505, 512–13 (E.D. Pa. 2019) (holding that the appropriations rider prohibited DoJ from using its funds to "prosecute a violation of supervised release premised on state law-compliant use of medical marijuana").

Once again, the USAO's argument loses. Even if the USAO thinks it cannot pursue revocation, the Court can (and must). The federal judiciary has no way around applying applicable federal law (including those federal laws the USAO chooses not to enforce). *See supra* n.7. When, as here, the statute's language is plain, the sole function of this Court is to enforce the law according to its terms. *See Dodd v. United States*, 545 U.S. 353, 359 (2005). The law is clear: the

...

Controlled Substances Act lists marijuana as a Schedule I drug. *See* 21 U.S.C. § 812(c). Defendant Williams' use of marijuana was in violation of a condition of his supervised release. And his repeated use requires mandatory revocation. *See* 18 U.S.C. § 3583(g)(4). Despite the USAO's hypothetical objection (*see* **Doc. 117 at 9**), the Court can—and must—"assume[] control over th[is] litigative decision[]." Even though the United States Attorney "may (today) think his approach makes for better policy," policy considerations do not matter "when the words on the page are clear." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370 (2018) (Gorsuch, J.).

This makes sense given that the "sentencing court" has "supervisory power over the defendant's term of supervised release." *Wilson*, 2022 U.S. App. LEXIS 10774, at *30. Supervised release is part of the original sentence, after all. *See United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021). But the USAO's role in sentencing matters—and, by extension, supervised release—are "strictly advisory." *United States v. Garcia*, 78 F.3d 1457, 1462 (10th Cir. 1996). As the Supreme Court explained in *Booker*, judges—not prosecutors—exercise sentencing power. *United States v. Booker*, 543 U.S. 220, 256–57 (2005). As such, this Court is "not under any duty to accept the government's stipulation," *id.* at 1463, that the "specific evidentiary issues in this case, the practical, strategic, and resource-based difficulties" (**Doc. 117 at 1**) are dispositive. The Court finds the United States' argument regarding "prosecutorial discretion" to be without merit. *See* **Doc. 117 at 9–11**.[10]

Plus, courts have generally declined to extend the doctrine of prosecutorial discretion to revocation hearings. *See, e.g., Bermudez-Plaza*, 221 F.3d at 234–35 ("[R]evocation proceedings are not criminal proceedings and neither the Attorney General nor any other officer is solely

---

[10] As an aside, the DoJ's "Justice Manual" does not contain any provision about supervised release. Title 9 discusses the Criminal Division's role in supervising "the enforcement of all federal criminal laws . . . ." Justice Manual § 9-1.000. The section discussing "Principles of Federal Prosecution" also make no mention of supervised release revocation. *Id.* at § 9-27.000, et seq.

15

responsible for their initiation."); *Mejia-Sanchez*, 172 F.3d at 1176 ("[W]e also reject Meija-Sanchez's contention that only the United States Attorney may initiate revocation proceedings."); *Davis*, 151 F.3d at 1306–08 (rejecting the argument that "the U.S. Attorney [i]s the only officer who may initiate revocation of supervised release"); *Amatel*, 346 F.3d at 279–80 (same).

\* \* \*

In closing, this Court—once again, *see* **Doc. 115 at 3**—quotes the Tenth Circuit:

> There is no requirement that revocation proceedings be initiated by a particular officer of the government, or by any officer. The sentencing court may initiate such proceedings *sua sponte* based on information acquired from any source, including the probation officer . . . . Moreover, because of the ongoing relationship between the sentencing court and the defendant created by the imposition of a term of supervised release, placing the sole discretion to initiate a revocation proceeding with the U.S. Attorney would be tantamount to abdicating the Judiciary's sentencing responsibility to the Executive.

*Davis*, 151 F.3d at 1307–08 (cleaned up). The USAO's position has no firm grounding in text, history, or precedent. And "policy concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 596 U.S. 328, 346 (2022); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 n.9 (2025) ("[P]olicy-based concerns, even if significant, cannot trump a federal statute."); *Eaglemed LLC v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017) ("[P]olicy reasons cannot trump the plain language of the statute.").

As such, this Court will not abdicate its constitutional—and statutory—responsibility to the Executive. This Court rejects the notion that the USAO may refuse to appear or participate in a supervised release hearing. If the AUSA does not wish to question witnesses, the Court[11] will.

---

[11] Federal Rule of Evidence 614 gives a trial judge "authority to question witnesses." *United States v. Koerber*, 10 F.4th 1083, 1119 (10th Cir. 2021). Such power is "beyond dispute." *Id.* (citing *United States v. Scott*, 529 F.3d 1290, 1299 (10th Cir. 2008) (establishing that "a district court has the power to call a witness at sentencing.")). In fact, a district court can "independently establish facts when the government . . . fails to present any evidence." *United States v. Gatewood*, 370 F.3d 1055, 1063 (10th Cir. 2004) (cleaned up), *vacated on other grounds*, 543 U.S. 1109 (2005) (remanding in light of *United States v. Booker*, 543 U.S. 220 (2005)).

16

*Cf.* Standing Order, 25-MC-00004 (Jan. 9, 2025). If the United States does not want to argue—it need not.[12] The proceeding will occur, though. And the United States will produce[13] witnesses and evidence. "[T]his Court does not, and will not, abide by Department of Justice policy changes, but will apply the law as passed by Congress and signed by the President." *United States v. Morrison*, No. 07-cr-50-2, 2023 U.S. Dist. LEXIS 167653, at *3 (W.D.N.C. Sept. 20, 2023); *see also United States v. Aguilera*, No. 21-cr-62, 2023 U.S. Dist. LEXIS 243766, at *37 (W.D. Tex. Oct. 13, 2023) ("This Court is bound by legal precedent, not the policy of the Department of Justice, which can vary from administration to administration.").

---

Under Tenth Circuit precedent, this Court can call the witnesses. And the Court may question witnesses. To the extent there are no published cases discussing Rule 614 at supervised release revocation hearings, that's likely due to the fact "the usual rules of evidence need not be applies in revocation hearings." *United States v. Henry*, 852 F.3d 1204, 1207 (10th Cir. 2017).

[12] To be clear: the Court is not requiring the USAO to advance any particular position or line of argument. *See* **Doc. 117 at 12** ("[T]he United States Attorney's Office must retain the independence to exercise its judgement in determining which positions advance the public interest in court."). The Court is, however, requiring an AUSA to appear.

[13] Here, the Court is simply requiring the United States take routine logistical steps. But even if this Court were to call witnesses on its own prerogative and have the United States pay the costs associated with that witness's appearance, that would not be a novel concept. *See* **Doc. 612** at *United States v. Saldana*, No. 09-cr-32 (D. V.I.) (ordering the United States to "procure the attendance" of two witnesses), *aff'd* 719 F. App'x 120, 129–30 (3d Cir. 2017) (unpublished); *see also U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1058 (8th Cir. 1984); *United States v. Leslie*, 542 F.2d 285, 289 (5th Cir. 1976). In fact, back in 2001, United States District Judge Richard Kopf wrote the following:

> Lastly, Defendants argue that I violated "separation of powers" principles by directing the government to obtain the attendance of witnesses. The Tenth Circuit has rejected a similar argument . . . and so do I . . . . I could have subpoenaed the witnesses. A subpoena, of course, would have commanded the United States Marshal to serve that process. The United States Marshal is an executive branch officer. Since I plainly had the power to issue a subpoena, I fail to see how I have intruded upon the executive branch by using the more informal method of ordering a prosecutor to obtain the attendance of a witness rather than by using a subpoena to command the United States Marshal.

*United States v. Cirrillo-Davilla*, 124 F. Supp. 2d 1140, 1151 (D. Neb. 2001). The subpoena power mentioned above is laid out in Fed. R. Crim. P. 17(a). And, under Tenth Circuit precedent, courts can issue subpoenas to compel attendance "at formal proceedings such as hearings and trials." *United States v. Villa-Chaparro*, 115 F.3d 797, 804 (10th Cir. 1997).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Schlenker's supervised release revocation hearing will be **RESET** and the USAO's oral motion "not to proceed" is **DENIED**. *See* **Doc. 113**.

**IT IS FURTHER ORDERED** that the United States must produce witnesses and documentary evidence in support of the Petition to Revoke Defendant's term of Supervised Release.

**IT IS SO ORDERED**.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE